THOMPSON, J.
 

 The plaintiff bought a piano from defendant on June 29, 1920, for $950, on which was paid $100 in cash and a special discount allowance of $75. The bal- . anee of the price was to be paid in monthly installments of $26 each, beginning with August 3, 1920.
 

 All of the installments were paid up to and including January and February, 1922, amounting to $494, leaving balance due as of that date exclusive of interest the sum of $281.
 

 Some time after the February payment, an agreement was entered into by which the plaintiff was granted until some time in July to pay the installments falling due in March, April, May, June, and July, amounting to $130.
 

 On July 10th the defendant wrote the plaintiff, directing his attention to the fact that the extension period had expired, and requesting him to call immediately and settle the past-due installments.
 

 The plaintiff failed to make settlement, and or. July 25th the defendant sent its agent with a truck and several colored helpers and removed the piano from plaintiff’s home.
 

 Thereupon the plaintiff instituted this suit for damages for the alleged unlawful invasion of his house and the removal of the piano without his consent or authorization. He also sues for the return of the amount paid on the piano, less a reasonable amount for its use.
 

 The ease was tried by a jury, which rendered a verdict rejecting plaintiff’s demand.
 

 There is a conflict between the testimony of the young daughter and young son of plaintiff and the testimony of the defendant’s agent Shannon as to what actually happened at the time the piano was removed.
 

 We deem it unnecessary to discuss this testimony in detail or to attempt the impossible task of reconciling the conflict.
 

 From our view of the case, it is immaterial’ whether the young daughter of plaintiff consented to the removal of the piano or not, or-whether she failed to protest against the removal.
 

 The fact remains, and is undisputed, that-the plaintiff, who owned the instrument and. who alone was responsible for the balance of the purchase price, was absent from home at the time, and this fact was made known to defendant’s agent after he entered or was admitted into the house.
 

 The agent made no effort to ascertain the •whereabouts of plaintiff or to get his consent to remove the piano.
 

 According to his testimony, he went to the-plaintiff’s home prepared to take the piano away. When the young daughter of plaintiff came out, the agent addressed her as Mrs. Lu-thy, and informed her that his mission was to • collect the balance due on the piano or to ask its return. The agent was uncertain as to the reply made by the young lady, but the young ■ lady and her young brother both testified that the young lady told the agent that he would have to see her father, whereupon the agent reiflied that he had nothing to do with the father, and proceeded to remove the piano.
 

 After informing the young lady that he was going to remove the piano, the agent, as a sort of justification for his action and as it were to shield his company from responsibility in the premises, presented to the girl and caused her to sign a most remarkable document, purporting on its face to come from the plaintiff and addressed to the defendant. It is as follows:
 

 “Owing to the fact that I have not complied and can no longer comply with the obligations of my contract in which I purchased Werlein P. No. 80921, would ask that you please repossess it and cancel the remainder of my debt to you.
 

 “All right, interest, and equities that I may have in the above-described instrument- are hereby relinquished.”
 

 It needs no citation of authority to show that the young minor daughter, of .plaintiff'
 
 *755
 
 could not, unless specially authorized by her father, grant permission to remove the piano,to waive all interest in the instrument, and to forfeit all payments made thereon amounting to $669.
 

 There is no pretense that the daughter had any such special authority.
 

 The document was not binding on plaintiff and cannot therefore serve as a shield in behalf of the defendant and exempt it from responsibility for taking the piano out of plaintiff's house.
 

 The doctrine contended for by defendant, that, in the absence of the husband, the wife controls the property in the home, does not prevail in this state. The husband is head of the community. In his name alone can debts be created against the community except in certain cases and under certain circumstances, and he and the community alone are responsible for the debts of the community.
 

 In the instant case the wife would not have had any greater right to have surrendered the piano and to forfeit all payments than had the daughter.
 

 However, all such argument is beyond the issue, for the reason that, while the plaintiff’s wife was at home, the agent did not see her and had no communication with or from her.
 

 Act 62 of Ex. Sess. 1877 provides that it shall not be lawful for the vendors or transferors of any movable property exempt from general seizure to enter the premises of any persón to whom such property has been sold or transferred with the object of removing said property under the assumption or pretense ’that the buyer or transferee had by agreement given' such right of entry or removal. '
 

 And any person guilty of entering or removing any property as above mentioned shall be fined not exceeding $200 and imprisoned not more than three months, reserving the right of the injured party to sue for damages.
 

 The defendant cites the case of Mrs. Jenks v. Sewing Machine Co., 34 La., Ann. 1241, in which, in construing Act 62 of 1877, the court rejected a demand for damages against the company for entering and removing a machine.
 

 In that case, however, the plaintiff who bought the machine had never paid one single installment; she was present when the agent came for the machine and gathered up the attachments, delivered to him and permitted him to carry the machine away without remonstrance or objection.
 

 The case clearly has no pertinent analogy to the instant case.
 

 Counsel fail to cite the case of Van Wren v. Hugh Flynn, 34 La. Ann. 1158. In that case the defendant had sold the plaintiff some furniture on the installment plan. The plaintiff defaulted in his payments, and, after the maturity of the last note, defendant sent its agent and removed the furniture from the house. The plaintiff was absent at the time, but his mother, sister, and sister-in-law occupied the house, who informed the agent that the plaintiff was expected home and requested the agent to wait until plaintiff’s return.
 

 This court affirmed a verdict of the jury for $750 damages:
 

 “No one appreciating the jealous care with which our law guards the sacredness of every man’s house and his lawful possession of property against invasion or disturbance, otherwise than by proceedings taken under the sanction and through the agency of the public justice, can question that, unless removed from its general principles by the effect of the agreement set up in defense, the acts which we have detailed constituted a gross outrage upon the rights and feelings of plaintiff, as a citizen and a man, for which courts of justice must either grant redress or sanction the personal exaction of satisfaction by violence.
 

 In the above-mentioned case the defense relied on an agreement by which the seller had the right to retake the furniture on nonpayment of the price, but the court held that the agreement conferred at the most a legal right upon defendant, which, like other rights, could
 
 *757
 
 be enforced only with consent of plaintiff or by legal process.
 

 No such agreement was made in this case. The plaintiff did not consent for the defendant to enter his house and to repossess the instrument. The plaintiff merely hound himself to return the piano upon written demand at any time after he had failed to make any payment when due.
 

 Our conclusion is that the defendant is liable in damages and have decided to fix the amount at $350.
 

 The defendant has prayed in reconvention for judgment for the balance due on the piano with recognition of its vendor’s privilege. This the defendant is entitled to.
 

 For the reasons assigned, the verdict of the jury and the judgment based thereon are annulled and set aside, and it is now ordered that the plaintiff have judgment against the defendant in the sum of $350, with legal interest from judicial demand, to wit, July 31, 1922.
 

 It is further ordered:
 

 That defendant have judgment in reconvention against the plaintiff for whatever balance may he due on the piano with interest as provided in the contract, in excess of the amount allowed plaintiff herein in principal and interest.
 

 That the vendor’s privilege be recognized on the piano for said balance due, and that defendant pay costs of both courts.