## BROWN v. I. M. CAUSEY & CO., Inc.

### No. 1213.

Court of Appeal of Louisiana. First Circuit.
Oct. 5, 1933.

C. C. Ratcliff and Jas. L. Helm, both of Baton Rouge, for appellant.

W. O. Watson, of Baton Rouge, for appellee.

MOUTON, Judge.

Plaintiff purchased some furniture from defendant company for $95 on the installment plan, on which a balance of $3.40 was due.

Plaintiff alleges that the defendant company, through its employees, entered her home during her absence and without her consent and authority removed the furniture. For the humiliation, etc., caused by that alleged trespass, she is claiming damages for $750 against defendant.

The demand of the plaintiff was rejected by the district judge, who gave judgment in reconvention in favor of defendant for $3.40 balance due on the purchase price of the furniture, which was in the possession of defendant company at the time of the trial.

Counsel for defendant company admits that defendant would be liable in damages to plaintiff if the furniture had been removed and held by defendant without the consent or authority of the plaintiff.

The issue presented is therefore one of fact, and is as to whether or not the furniture was removed and retained by defendant without the consent or authority of plaintiff.

It is shown that Mr. A. P. Boyd is an adjuster for defendant company and was instructed by the company never to repossess furniture without the consent of the customer. That such were his instructions is confirmed by the testimony of Mr. I. M. Causey, president of defendant company. Mr. Boyd went to the home of the plaintiff with his truck, and had for collection the balance of account due by plaintiff to defendant company. The daughter of the plaintiff, Ceola, about 11 years old, said her mother was not at home, that she was at work. Mr. Boyd says he told her he wanted to see her mother about this account, and that she said she would go and telephone Helen; that is, her mother. In about ten minutes thereafter, Ceola returned, according to Mr. Boyd's testimony, and told him that her mother said to go ahead, take the furniture, as she was going to the store to see Mr. Causey about it. The statement thus made by Mr. Boyd is corroborated by the testimony of Thompson and Coston, two colored men who were working on the truck with Mr. Boyd.

Ceola, Helen's daughter, says she told Mr. Boyd that she did not know where her mother was, that she would ring for her, and that she would ring up Mrs. Keeling, who said her mother was not at Mrs. Keeling's home. She denies that she telephoned, talked to her mother, and that she had said to go ahead and take the furniture.

Ceola having, according to the testimony of Mr. Boyd, of Coston and Thompson, his assistants on the truck, made the report from her mother, as before stated, the furniture was taken from the home of the plaintiff by Mr. Boyd, was stored away at defendant's business place, and labeled "Helen Brown," plaintiff's name.

There can be no doubt that Mr. Boyd was instructed by defendant company not to remove any furniture without the consent or authority of the customer. This is shown by the testimony of Mr. Boyd and by that of Mr. I. M. Causey, president of defendant company, of whom counsel for plaintiff say in their brief is a gentleman of the highest type and assure us that no attack is being made on his character "or testimony offered by him." As Mr. Boyd was so instructed, it is almost impossible to believe that he would have violated these instructions and would have invaded the home of plaintiff and without her authority would have removed the furniture therefrom.

It is true that Helen was at the office of Dr. Lamotte at the time her daughter went to the 'phone to ring her up. To show that Ceola had not telephoned to her mother, Dr. Lamotte was called in as a witness by plaintiff, and was asked if any one had communicated with her at the time, meaning, we take it, by telephone. He answered that no one had, and that he would have known it when she was in his office, but added: "I would not know while she was in my sitting room," where, it may be stated here, she might have been at the time.

Under the facts and circumstances above referred to, the preponderance of the evidence clearly indicates that the girl, Ceola, made the statement to Mr. Boyd, as testified to by him and confirmed by the testimony of his two employees on the truck. As she unquestionably made that statement, the question naturally arises as to where she got the information that the furniture should be taken, and that her mother said she was "going up to the store to see Mr. Causey about it." We cannot believe that she fabricated this information as coming from her mother. The only logical conclusion is that her mother had 'phoned her to that effect and that she so reported to Mr. Boyd.

Plaintiff testifies that, when she came back home that evening, the furniture was gone

and that she had not consented to its removal. She testifies, however, that the day after it had been removed she went to the business place of defendant company to ask "them not to sell" the furniture, as one of her neighbors had said he had made arrangements to buy it. Further on, she says, she asked Mr. Causey if she could get the furniture back. Her daughter, it will be observed, said, according to Mr. Boyd, that her mother had said to take the furniture, and that she would see Mr. Causey about it, and her own evidence shows that the day after its removal she did call on Mr. Causey and talked to him about getting the furniture back. At this interview she does not say, nor does Mr. Causey say, that she had protested about the taking of the furniture as having been an outrage or trespass. Her conduct in trying to get back the furniture indicates very strongly that she had gone to see Mr. Causey about it, as her daughter had said to Mr. Boyd that she was going to do.

Plaintiff testifies that Mr. Causey told her if she brought $4 and a note to him from Mrs. Janstrenski he would send the furniture back. She testifies that she told Mr. Causey that she could not make definite arrangements on that proposition, and that she would try to get the note from Mrs. Janstrenski, and says: "After I went back and she wouldn't give me the note."

The testimony of Mr. Causey is that he told plaintiff he would accept $4 on the account and a guaranty from Mrs. Janstrenski that she would see the account paid and that he would have no further trouble in collecting; that, if Mrs. Janstrenski would not be willing to guarantee the account, the agreement was that he would hold the merchandise until she herself had paid it.

Counsel for plaintiff refer to the case of Luthy v. Werlein Co., 163 La. 752, 112 So. 709, 710. In that case the court said: "It needs no citation of authority to show that the young minor daughter of plaintiff could not, unless specially authorized by her father, grant permission to remove the piano."

Here we find, as hereinabove stated, that the mother did authorize, through her daughter, the removal of the furniture, and that therefore the ruling in the Werlein Case has no application.

If she did not consent to the removal of the furniture, her subsequent conduct in trying to get a guaranty from Mrs. Janstrenski to pay the balance of the account and her agreement with Mr. Causey in reference thereto effected and operated a ratification of what had taken place in reference to the furniture or was a waiver of any rights she may have had, if defendant had really committed the alleged trespass, but which the evidence shows was not committed by defendant company through its agents or employees.

The judgment of the trial court comes up to us with the presumption of correctness; and particularly is it so when the issue presented for determination is one of fact and to a large extent involves, as in this case, the credibility of the witnesses. In a case of this character, the finding below will not be disturbed, unless there be manifest error.

In this case, we think, the conclusions of the district judge are supported by the evidence, and that there is certainly not the manifest error which would authorize a reversal by this court.

Judgment affirmed.

ELLIOTT, Judge (dissenting).

I differ with the majority of the court as to the proper determination of this case. The plaintiff, a negro woman, bought from defendant furniture valued at $95, payable on the installment plan. She paid on it until the balance due was $3.40.

Then not being able, or neglecting or failing for some time, to pay this small balance of $3.40, defendant's collector went out with his wagon and helpers, and, in her absence, claiming that they had her consent by means of a message received from plaintiff, through her little daughter at the house, they loaded her furniture in the wagon and took it to defendant's warehouse, where it is held against her. Defendant now has the furniture and the $91.60 paid on it and judgment against plaintiff for the balance due, $3.40.

Defendant supports its defense by the testimony of its agents and employees. After reading the testimony, I am unable to agree that the defense should prevail. I cannot believe that plaintiff freely consented within the meaning of the Civil Code, art. 1819, to what had been done.

I think the judgment appealed from should be reversed and judgment rendered in favor of the plaintiff for an amount proper to the loss sustained.