On January 21, 1941, plaintiff purchased a Chevrolet automobile from defendant for the price and sum of $424, on which $100 was paid in cash, the balance thereof to be paid in weekly installments of $4.50 each. The remainder of the purchase price, $324, was secured by a chattel mortgage, upon which, up to May 27, 1941, plaintiff alleges having made various payments aggregating $30.
Plaintiff further alleges that on April 4, 1941, he purchased four new tires and inner tubes for the price of $52, which were in turn mounted on his said automobile.
Plaintiff further alleges that on May 27, 1941, defendant, acting through its agent and employee, illegally and without authority, forcibly took possession of the said automobile without his consent, authorization or acquiescence; that, as a result of these illegal and unwarranted acts of defendant, plaintiff sustained damages in the loss of the use and enjoyment of his car, which he fixes at $1 per day, from the date of its wrongful conversion, May 27, 1941, until it shall be returned to his possession. Plaintiff also alleges that he has been additionally injured and damaged in the amount of $1,476, itemized as follows:
1. Cost of the car, $424.00 2. Humiliation, embarrassment and inconvenience, $1000.00 3. Cost of four (4) new tires and inner tubes, $52.00
The prayer of the petition is that defendant be ordered to return the said automobile to plaintiff and that plaintiff recover judgment in the sum of $1,000 and for the additional sum of $1 per day, computed from May 27, 1941, until its return.
In the alternative, should defendant refuse to return the said car, plaintiff prays for judgment in the additional amount of *Page 567 
$476, being the purchase price of the car, tires and tubes.
Defendant, in answer to the petition, denied liability and further denied that plaintiff had paid the sum of $30 on account of the unpaid balance of the purchase price, asserting that, in truth and in fact, plaintiff had paid the sum of $25.50.
The trial court, after hearing on these issues, rendered judgment in favor of plaintiff for damages in the sum of $150, and ordering the defendant to forthwith return to plaintiff the automobile in question. The court further ordered that "in the event the said automobile is not returned to the plaintiff there will be an additional judgment in favor of the plaintiff, Henry Victor, and against the defendant, Fairchild Motor Corporation, in the sum of $180.00, making a total of $330.00, together with legal interest from date of judicial demand, until paid, together with cancellation of plaintiff's obligation on the balance of the purchase price of said automobile, and for all costs of court."
Defendant has appealed and plaintiff, by way of answer to the appeal, asks for an increase to the amount originally prayed for.
Defendant has conceded the repossession of plaintiff's automobile by one of its agents acting under and by virtue of its instructions and that it is presently in its possession. In view of this, the only question before us for determination is the nature of the repossession, i.e., whether defendant's repossession was either with the consent of the plaintiff or thereafter acquiesced in.
There is some degree of conflict between the testimony of plaintiff, his wife and daughter, and that of defendant's agent, Martinez, as to what actually happened at the time the automobile was removed. The fact remains, without necessarily discussing the testimony in detail, that the plaintiff, who owned the vehicle and who alone was responsible for the balance of the purchase price, was absent from his home at the time the car was removed by Martinez. This fact was made known to defendant's agent on arriving at plaintiff's home.
Plaintiff testified that he was not present when the car was removed; that he never authorized his wife to surrender it, and that his first knowledge of its conversion was when he returned to his home.
Plaintiff's wife and daughter testify most positively that plaintiff was not at home on the occasion in question; that defendant's agent was so informed by them when he asked for plaintiff; that the agent made no effort to ascertain the whereabouts of plaintiff, but simply notified plaintiff's wife that "he came to get the car", it being then parked in front of plaintiff's home, to which she replied that she "did not have anything to do with it" and had no authority to permit its removal. Plaintiff's wife and daughter further stated that defendant's agent thereupon hooked the rear end of his car to the front end of plaintiff's automobile by means of a steel bar known as a "patent bar" and drove away.
According to the agent's testimony, he went to plaintiff's home prepared to either collect the unpaid installment or to take the car away. That, after speaking to plaintiff's daughter, he approached a man in the yard; that he (the agent) asked this man if he was "Henry Victor", and, on receiving an affirmative answer, informed this individual of his mission, to which the latter replied: "`No, Mr. Martinez, you will have to have a set of papers'"; that finally this party, whom Martinez assumed was plaintiff, consented to the automobile's removal, though Martinez admits no written evidence of a release was obtained.
The evidence in the case clearly establishes that defendant, without the consent, authority, or acquiescence of plaintiff, and without due process of law, wrongfully converted plaintiff's automobile. The proof of the trespass is complete and it is shown to have been committed under instructions of defendant. This was, undoubtedly, a tortious conversion, without legal justification.
Although defendant contends that plaintiff thereafter acquiesced in the removal and the retention by it of the car in question, the weight of the evidence on this issue is to the contrary.
Defendant contends that the measure of damages for an unlawful seizure, unaccompanied by the use of force or violence, is the value of plaintiff's equity in the property converted.
In the case of Lewis v. Burglass, La.App., 172 So. 807, 808, we said: "There can be no doubt that the jurisprudence of this state is firmly established, beginning with the case of Thayer v. Littlejohn, 1 *Page 568 
Rob. 140, that a vendor or transferor of movables, who illegally invades the premises of the vendee and seizes the conveyed property, is responsible in damages."
The absence of force or violence in the illegal conversion of property does not absolve one from liability. In the case of Bettis v. Singer Sewing Machine Company, 10 Orleans App. 273, this court said: "But it was effected without judicial process, and it is immaterial how gently defendant acted; it was a trespass vi et armis, in contemplation of law, and plaintiff is entitled to recover substantial damages."
See, also, Thayer v. Littlejohn, supra.
In the case of Luthy v. Philip Werlein Company, Inc.,163 La. 752, 112 So. 709, 710, the Supreme Court quoted from the case of Van Wren v. Hugh Flynn, 34 La.Ann. 1158, as follows: "`No one appreciating the jealous care with which our law guards the sacredness of every man's house and his lawful possession of property against invasion or disturbance, otherwise than by proceedings taken under the sanction and through the agency of the public justice, can question that, unless removed from its general principles by the effect of the agreement set up in defense, the acts which we have detailed constituted a gross outrage upon the rights and feelings of plaintiff, as a citizen and a man, for which courts of justice must either grant redress or sanction the personal exaction of satisfaction by violence.'"
Our conclusion is that, though the trespass and conversion in this case was not accompanied by force or violence, it should, nevertheless, be the subject of judicial condemnation and, in conformity with the jurisprudence of this subject, the judgment rendered below is sustained by the law and does substantial justice between the parties.
For the reasons assigned, the judgment appealed from is affirmed, with costs.
Affirmed. *Page 606