Plaintiff seeks the recovery of $300 damages, alleging that defendant, through its agents, forcibly and illegally removed from his home at No. 1114 St. Claude Avenue, in the City of New Orleans, certain household furniture purchased by him from the defendant.
The court below rendered judgment in favor of plaintiff for $200. From this judgment defendant has appealed.
The record discloses that on the respective dates of October 14th and December 13th, 1939, plaintiff purchased the household furniture in question, both sales aggregating the sum of $220.56. The total price was made payable in monthly installments of $10 and payment secured by a chattel mortgage. By March, 1940, a total of $35 had been paid on account, but nothing since, so that a balance of $185.56 was yet due when, on August 1, 1940, the furniture was repossessed by defendant.
The sole disputed point is whether, as contended by defendant, plaintiff voluntarily surrendered the furniture to defendant's agents, or whether, as contended by plaintiff, defendant's agents obtained possession by means of force and threats. There is a conflict among the witnesses on the point. However, the testimony satisfies us that the act of defendant's agents in repossessing the furniture was clearly illegal and that defendant is liable for the damage caused thereby.
It is shown that at the time of the purchases plaintiff was employed as a laborer by the Works Progress Administration. His services being no longer needed, he was discharged and was, thus, unable to continue the monthly payments due defendant. In view of this dilemma, it is shown that in June, 1940, he called at defendant's place, notified defendant of his inability to continue the monthly payments, and requested that he be permitted to pay $1 per week on account until he was reemployed. This method of settlement was rejected and it is shown that defendant suggested that plaintiff sign a "release" of the furniture, to be held in storage until the account became current. Plaintiff refused to execute a release, informing defendant that he would endeavor to obtain the amount past due. Failing to hear further from plaintiff, defendant thereupon repossessed the furniture.
It is proved, and the fact remains undisputed, that plaintiff, who owned the furniture and who alone was responsible for the balance of the purchase price, was absent from his home at the time it was *Page 710 
retaken, and that this fact was made known to defendant's agents. No effort was made to ascertain plaintiff's whereabouts or to obtain his consent to the removal.
It is proved to our satisfaction that, without prior notice to plaintiff, defendant's agents called at plaintiff's home at about 9 o'clock in the morning of August 1, 1940, for the purpose of either obtaining immediate payment of the amount due or seizing the furniture. Plaintiff's wife was at home, with her two infants, and defendant's agents demanded of her that she surrender the furniture, threatening to have her arrested and placed in jail if she did not do so. With this demand and threats and as a sort of justification for their action, and, as it were, to shield their company from responsibility, defendant's agents presented to plaintiff's wife — and caused her to sign — a purported "release", authorizing defendant to remove the furniture and to hold it in storage until the balance due on the account was paid. It is shown that a police officer was outside, though the purpose of his presence at that moment in that neighborhood is not made clear. Undoubtedly, his presence on the sidewalk in front of plaintiff's home at the time of this demand, irrespective of his mission — whether for directing traffic or some other purpose — was sufficient to induce plaintiff's wife to believe that the threat of arrest was real. It is shown that, as a result thereof, plaintiff's wife signed the document and the furniture was removed later that afternoon. On returning to his home and on learning of the occurrence, plaintiff complained to defendant, demanding the return of his furniture, but to no avail.
The testimony convinces us that plaintiff had no prior knowledge of defendant's acts, never consented at any time to the removal of his household effects, and did not authorize his wife, or any other person, to permit its repossession. It is also clear, to our minds, that plaintiff's wife acquiesced to the signing of the purported "release" and the retaking of the furniture in fear of imprisonment.
The fact that in June of 1940 plaintiff promised to obtain the required funds within two weeks and agreed that, failing therein, defendant could thereupon repossess the furniture, did not authorize defendant to enter plaintiff's premises and take back the goods sold. But, even conceding such an agreement — which, incidentally, though testified to by defendant's credit manager, is denied by plaintiff — there would still be no justification for defendant's conduct. The agreement does not purport, in terms, to confer upon the defendant the right to enter plaintiff's home during his absence, without his consent, and remove its contents. An agreement of like character was construed in the case of Van Wren v. Flynn, 34 La. Ann. 1158, to mean the following: "It conferred, at most, a legal right upon defendant, which, like other rights, could be enforced only with consent of plaintiff or by legal process."
The court in the cited case, after stating that the right to enter one's home, in his absence, without his consent and without notice and there remove its contents, is a grant of extraordinary power, concluded that "the grant of the simple right to retake his furniture, on non-payment of the price, cannot be construed to embrace such power". See Luthy v. Philip Werlein Co., Inc.,163 La. 752, 112 So. 709, 710.
Conceding, arguendo, that no threats or violence were employed by defendant's agents in causing plaintiff's wife to sign the purported "release", and that she executed the same voluntarily, it is to be noted that our Supreme Court, in the Werlein case, supra, which involved the release by written consent of a piano by the daughter, in the absence of the father and husband, for unpaid installments, held:
"The doctrine contended for by defendant, that, in the absence of the husband, the wife controls the property in the home, does not prevail in this state. The husband is head of the community. In his name alone can debts be created against the community except in certain cases and under certain circumstances, and he and the community alone are responsible for the debts of the community.
"In the instant case the wife would not have had any greater right to have surrendered the piano and to forfeit all payments than had the daughter."
Applying the principle therein announced, the document signed by plaintiff's wife in the instant case cannot exempt defendant from responsibility in damages for the illegal conversion of plaintiff's furniture.
In the case of Lewis v. Burglass, La.App., 172 So. 807, we had occasion to review the quantum of damages which has *Page 711 
been allowed in this type of case. The awards have not been less than $200 or more than $750. We are satisfied that the amount allowed in the judgment rendered below is sustained by the evidence and does substantial justice between the parties.
For the reasons assigned, the judgment appealed from is affirmed, with costs.
Affirmed.