234 So.2d 593

AUTOMOTIVE ACCEPTANCE CORPORATION, a Corporation

v.

Vaudy W. POWELL.

1 Div. 2.

Court of Civil Appeals of Alabama.

March 25, 1970.

598

Howell, Johnston, Langford & Fink-
bohner, Mobile, for appellant.

Herbert P. Feibelman, Jr., Mobile, for
appellee.

BRADLEY, Judge.

This case arose as a result of an action being filed by the plaintiff below, appellee here, against defendants, W. E. Timmerman, personally, and doing business as Auto Bargain Center and Automotive Acceptance Corporation, a corporation, for the alleged conversion of a used automobile and trespass in its repossession.

From a general verdict and judgment of $1500.00 for the plaintiff against Automotive Acceptance Corporation only, the defendant appeals.

There were ten assignments of error filed by the appellant. In brief, the fourth assignment of error was not argued, hence it is considered to have been waived. Supreme Court Rule 9.

The appellee purchased a used 1963 Chevrolet automobile from A. B. C. Motors, Mobile, Alabama on September 12, 1964. The contract of sale revealed that $630 was paid as a down payment, and payments of $87.83 per month were to be made thereafter, with the first one due on October 12, 1964, until the balance of $2,669.90 was paid.

The purchase agreement was styled conditional sales contract, but had attached to it a promissory note signed by both the appellee and his wife. Subsequent to the purchase by appellee, the note and conditional sales contract, or chattel mortgage, were either sold or assigned to the appellant, Automotive Acceptance Corporation.

The October 1964 payment was made on time, but the November 1964 payment was not made, and on November 16, 1964 the automobile was repossessed from the appellee by a Louisiana detective in Baton Rouge, Louisiana.

The appellee stated that he was working in Baton Rouge and his wife was visiting him, and had driven the car from Mobile, Alabama.

The testimony was to the effect also that appellee offered to pay to the detective the late installment and commented that "it was only four days late," but the detective refused the proferred payment and said that he had told his employer that the repossession was a little hasty.

The evidence further showed that the appellee, on the day after the repossession, called A. B. C. Motors and offered to pay the delinquent installment but was told he would have to pay the entire amount due on the car before he could regain possession of it.

The testimony revealed that after the repossession, the automobile stayed on the lot of A. B. C. Motors for about one year.

Appellant contends, in his first assignment of error, that the trial court erred in refusing his motion for a new trial.

This assignment is grounded on the contention that the jury's verdict is inconsistent because it found against Automotive Acceptance Corporation, yet absolved A. B. C. Motors.

Appellant submits that liability could attach to Automotive Acceptance Corporation only through A. B. C. Motors and Jones, the Louisiana detective, as its agents, and there was no evidence establishing such an agency relationship.

Appellee says the verdict is not inconsistent and cites us to the Alabama Court of Appeals case of American Discount Co. v. Wyckroff, 29 Ala.App. 82, 191 So. 790.

We feel that the *American Discount Co.* case is distinguishable from the case at bar, for that in the cited case, although there was a repossession of an automobile, the contract was not in default; second, the agent was not joined as a party defendant to the action; and, third, employees of the

defendant company, not an employee of the defendant's agent, repossessed the automobile.

Therefore, based on the facts in the cited case, we deem *American Discount Co.,* supra, to be inapplicable to the case at bar.

Appellant, on the other hand, cited us to the cases of American Southern Ins. Co. v. Dime Taxi Service, Inc., 275 Ala. 51, 151 So.2d 783 and R. L. Turner Motors v. Hilkey, 260 Ala. 577, 72 So.2d 75, in support of the proposition that the verdict was inconsistent.

In *American Southern Ins. Co.,* supra, the Supreme Court of Alabama said:

"* * * Our cases establish the rule that where a defendant is held liable only because he is responsible for the act of another, he cannot be held liable if such other is exonerated. * * * And where the master and servant are sued jointly, a judgment against the master absolving the servant of liability for tort committed by the servant is inconsistent and must be set aside."

And, in R. L. Turner Motors v. Hilkey, supra, the Supreme Court held that where the verdict is inconsistent, a new trial should be granted.

■ In the case at bar, the only means of attaching liability to the appellant would be through A. B. C. Motors as its agent, but the jury found A. B. C. Motors not to be liable. Consequently, the jury verdict finding against the master, Automotive Acceptance Corporation, and for the agent, A. B. C. Motors, where the agent allegedly committed the tort, is inconsistent, and a new trial should have been granted.

In his assignment of error numbered two, appellant says that the trial court erred in giving, at the request of appellee, the following requested charge:

"I charge you, members of the jury, that apparent authority means the authority which it seems that a person working for another person, firm or corporation has when doing certain acts, and that the employer is bound by the acts of such agent, servant or employee who acts with such apparent authority and accepts the benefits of such acts."

■ Appellee says there was evidence in the record revealing an agency relationship, but, whether there was or not, is a question for the jury. In delineating the evidence from which an inference of agency could be drawn, the appellee directs our attention to the following pages of the transcript:

(p. 81)

"Q. Did he tell you who he was working for?

"A. Yes. He said he was hired by A. B. C. Motors.

 * * * * * *

"Q. Then what? Did he say anything about calling anybody?

"A. Yes. He told me to call and see if I couldn't get it straightened out.

 * * * * * *

(p. 84)

"Q. What did he say?

"A. * * * and maybe, by that time I would be in touch with Mr. Timmerman or someone from A. B. C. to get it straightened out.

 * * * * * *

(p. 87)

"Q. All right sir, on direct examination, your lawyer asked you, did the man, who came to your hotel room, tell you who he was working for and your answer was that he said he had been hired by A. B. C. Motors. Is that what you testified to?

"A. Yes sir.

Q. Do you remember on August 27, 1966, when was [sic] in our office, do you remember these questions and answers: Question: 'Did this man who

came to get your car, at any time say he was working for Auto Bargain Center or Automotive Acceptance Corporation?' Answer: No, he didn't emphasize it. He was a Louisiana detective. Question: 'He didn't say who he was working for?' and your answer was: 'No sir.' Did you testify to that?

"A. I don't remember.

\*     \*     \*     \*     \*     \*

(p. 99)

"Q. Did he make any statement concerning whom he was employed by?

"A. No sir, I don't remember. All he said was that he was there to get our car and that he had papers from A. B. C.

\*     \*     \*     \*     \*     \*

"Q. Do you recall whether or not he specifically mentioned A. B. C?

"A. I believe he did.

"Q. Did he tell you who he was employed by?

"A. No sir, I don't remember.

\*     \*     \*     \*     \*     \*

(p. 101)

"Q. On the evening of November 17th, when detective Jones came into your motel room, did the detective advise your husband to make any phone calls concerning this, and, if so, to whom?

"A. Yes sir, I believe he told my husband to get in touch with A. B. C. Motors \* \* \*."

We would point out that all of the above testimony relating to the question of agency is that of the appellee or his wife. We would also point out that the effect of their testimony is that the detective Jones said he worked for A. B. C. Motors. Their testimony was not corroborated by any other testimony or evidence.

We deem this evidence insufficient upon which to base the charge given to the jury on behalf of appellee and now made the subject of assignment of error numbered two.

■ The doctrine of apparent authority does not rest upon what one thinks an agent's authority may be, or what the agent holds out his authority to be; rather, the doctrine of apparent authority is based on the principal's holding the agent out to a third person as having the authority under which he acts. The following statement on the doctrine of apparent authority is found in Am.Jur.2d, Agency, Sec. 74, p. 476:

"The apparent power of an agent is to be determined by the acts of the principal, and not by the acts of the agent; a principal is responsible for the acts of an agent within his apparent authority only where the principal by his acts or conduct has clothed the agent with the appearance of authority, and not where the agent's own conduct and statements have created the apparent authority."

We would point out that Owens v. Wood, 43 Ala. App. 366, 190 So.2d 734, is to the same effect, and the Court of Appeals had this to say:

"'In order to charge the principal because of apparent authority, a third party must prove that the principal manifested indicia of having cloaked the agent with the authority.' Restatement, 2d Agency, § 49."

■ We therefore conclude that the charge was an incorrect statement of the law, and thereby misleading to the jury. Furthermore, it should not have been given to the jury.

Assignment of error numbered three is grounded on the assumption that the court erred in giving plaintiff's requested charge two, which is as follows:

"I charge you, members of the jury, that a release executed after threats to arrest the person signing the release or to put such person in jail is not a vaild release and has no effect and such a document

cannot exempt the Defendants from responsibility in damages for such illegal repossession if the other elements of such illegality are proven."

Appellant's objection to this charge is that it assumes an illegal possession, is abstract and argumentative.

It has been held to be error to give a charge that assumes as true any matter from which an inference has been drawn of its untruth, Sloss-Sheffield Steel and Iron Co. v. Willingham, 29 Ala.App. 569, 199 So. 15; or to give a charge which is argumentative, Pierce v. Floyd, 38 Ala.App. 439, 86 So.2d 658.

■ After a careful consideration of the charge, we conclude that it was erroneously given. The given charge assumes an illegal repossession when it should have been premised on the jury believing from the evidence that there was an illegal repossession.

Appellant contends as his assignment of error numbered five that the trial court erred in its refusal to give the general affirmative charge with hypothesis to count 1 of the complaint. Count 1 is in the Code form for conversion. The form of that charge is as follows:

"I charge you, gentlemen of the jury, that if you believe the evidence in this case then you cannot find for the Plaintiff under Count one of his complaint and against the Defendant, Automotive Acceptance Corporation."

Appellant's rationale is that the inclusion of the deficiency judgment clause transforms the conditional sales contract into a chattel mortgage; and since the mortgage was in default, appellant was entitled to repossess the automobile. The appellee takes no exception with appellant's argument concerning the chattel mortgage; rather appellee contends that due to ambiguous wording of the payment terms, the contract (or chattel mortgage) was not in default. Further, appellee contends that a general verdict referable to at least one good count of the complaint, even though other counts may be bad, is a good verdict.

In support of his minor premise the appellant cites us to the case of Bern v. Rosen, 259 Ala. 292, 66 So.2d 711, which held that a contract providing that title should remain in the seller until the full payment of the purchase price, and that the seller could repossess the property on default of any payment, and resell the property and recover any unpaid balance of the purchase price, with costs and attorney's fees, was a chattel mortgage within the recording statute. In the case of Ison Finance Co. v. Glasgow, 266 Ala. 391, 96 So.2d 737, the Supreme Court construed an instrument, very similar to the one in question, purporting to be a conditional sales contract, as a chattel mortgage. That instrument contained all the provisions of the instrument in the instant case except for the deficiency judgment clause.

■■ We think it would be helpful at this point, to point out some of the provisions that give the instrument in question the flavor of a chattel mortgage. Generally, it should be noted that although the instrument is referred to as a contract throughout, it is not entitled "Conditional Sales Contract." Specifically, we note that the instrument in question refers to an attached promissory note. The execution of a promissory note along with the contract is evidence of a mortgage, General Motors Acceptance Corp. v. Jenkins, 234 S.C. 394, 108 S.E.2d 578, 582. And, in paragraph 5, we find the provisions for acceleration of all future payments upon default, for repossession, for foreclosure sale and residue for Powell, if any there be, or a deficiency for Automotive Acceptance Corporation, if the proceeds from the sale are inadequate to cover the total indebtedness; all of which have earmarks of an evidence of debt rather than of an installment sale, Lloyd's of London v. Fidelity Securities Corporation, 39 Ala.App. 596, 105 So.2d 728, 734.

However, before we can determine appellant's rights thereunder, we must consider appellee's argument regarding the indefiniteness of the payment provisions. The payment provision of the mortgage is as follows:

"* * * to be paid in 30 installments of $87.83, every month commencing on October 12, 1964, * * *."

The payment provision of the note is identical to that set out above.

Appellant, of course, contends that payment was due on the twelfth of each month and that on November 16 (the date of repossession), the payment was four days past due. Appellee insists that since no date was set for the subsequent payments, the payment could be made at any time in November and thus the mortgage was not in default.

In Hamilton v. Stone, 202 Ala. 468, 80 So. 852, the Supreme Court, in construing a contract for the sale of land, said as follows:

"Courts are loath to strike down a deliberate contract because of supposed uncertainty in any of its terms; and, if any of these terms are ambiguous and prima facie capable of more than one meaning, the court will look to the situation of the parties and the objects they had in view to determine their true meaning."

And in Limbaugh v. Boaz, 16 Ala.App. 411, 78 So. 421, the Alabama Court of Appeals said:

"* * * and, if possible for the contract to be so construed as to carry into effect the intention of the parties, if they can be ascertained, it is the duty of the court to so construe it."

Although the appellee insists that the parties' mutual construction of the contract is of no consequence, the case of Montgomery Enterprises v. Empire Theater Co., 204 Ala. 566, 86 So. 880, said:

"If a contract is of doubtful import as to any of its provisions, the practical construction put by the parties on such engagement therein is controlling of its meaning and must 'often prevail over its literal meaning.'"

As to the parties', especially appellee's, understanding of the contract's payment provisions, we wish to quote from the applicable pages of the transcript:

(Transcript page 81, direct examination of Vaudy Powell)

"Q. All right. Did he say anything to you about calling somebody?

"A. Yes sir.

"Q. What did he say?

"A. He started to pick up the car and I told him we were not but four days late. He said yes, he had told his boss that that was a little hasty, * * *."

On page 88:

"Q. At the time this man Jones came by your room on this occasion on November 17, 1964, was there a payment overdue under this contract?

"Mr. Feibelman: We object.

"Court: Overruled.

"Mr. Feibelman: We except.

"A. It was five days past due.

And on page 93:

"A. Well, I wouldn't call it polite for someone to take your car when you're just five days late with the payment."

The foregoing testimony clearly shows that not only did appellant feel that the payments were due the 12th of each month, but the appellee also understood that the payments were due on the 12th of each month. Therefore, we hold that the mortgage was in default.

We must now turn our attention to appellant's rights under the defaulted mort-

**604**

gage. In Harmon v. Dothan National Bank, 186 Ala. 360, 64 So. 621, the Supreme Court said:

"So far as legal rights and obligations are concerned, after forfeiture the mortgagee may treat the property as his own, and deal with it as he may choose, without incurring liability at law."

■■■■ Under our law, appellant was within his rights to repossess the property and it was therefore error to refuse the requested charge. It follows then that the appellee could not maintain an action for conversion since he had no legal title to the auto, and no immediate right to possession of the auto, Rhodes-Carroll Furniture Co. v. Webb, 230 Ala. 251, 160 So. 247.

■■■■ The appellee is correct in his theory that a general verdict referable to one good count in a complaint is a good verdict. Bessemer Liquor Co. v. Tillman, 139 Ala. 462, 36 So. 40; White v. Jackson, 36 Ala.App. 643, 62 So.2d 477. Inasmuch as we hold that count one is bad, the verdict could be based only on count three for trespass. However, since under assignment of error one we hold that appellant is deserving of a new trial, the case is to be retried on count 3 only.

In his assignment of error numbered 6, appellant says the trial court committed error when it failed to give the general affirmative charge with hypothesis as to count three of plaintiff's complaint. Count three is the Code count for trespass to personal property.

■■■■ Appellee contends that the repossession was not peaceable, and he would therefore be entitled to damages. Appellee is correct in his argument even if the mortgage is in default. Rhodes-Carroll Furniture Co. v. Webb, 230 Ala. 251, 160 So. 247. The gist of appellee's argument is that the detective obtained possession of the automobile by force, intimidation, or trick. To substantiate his theory the appellee refers us to his testimony and that of his wife:

(p. 80)
"A. He said he was a Louisiana detective and he come after the car.

\* \* \* \* \* \*
"A. I told him he was not going to get it.

\* \* \* \* \* \*
"A. He said he would get it or carry me to jail one.

\* \* \* \* \* \*
"Q. Did he have anything around his waist?

"A. He had a gun.

"Q. How did you happen to see it?

"A. Well, the way he was acting in the room—he would keep brushing his coat back.

\* \* \* \* \* \*
"Q. Now, after he told you that he would take you to jail if you didn't give him the car, what did you say?

"A. Well, I didn't want to go to jail. He informed me that if he had to take me to jail over there, that it would be rough to make a bond over there in Louisiana.

\* \* \* \* \* \*
(p. 82)
"Q. All right, that night when you said you would give him the car, were you afraid of him?

"A. Sure I was.

"Q. Was that because he had threatened to put you in jail, or for some other reason?

"A. Yes sir.

\* \* \* \* \* \*
(p. 99—Linda Powell)
"Q. Do you remember any conversation between Mr. Jones and your husband concerning what would happen if the car was not surrendered?

"A. Well, I remember him saying that, if he didn't turn it over to him, that

he would—the Sheriff, somehow, would come in; that he would call the Sheriff to come and get it, or that he would go to jail if he didn't.

\* \* \* \* \* \*

(p. 100)

"Q. Do you remember any conversation concerning the making of a bond in Louisiana?

"A. I remember him saying something about it. That it would be hard for him to make it.

\* \* \* \* \* \*

(p. 106)

"Q. So it was your impression that Mr. Jones was talking about taking your husband to jail. Is that correct?

"A. Yes sir."

However, appellee did not refer us to other testimony that bears on this issue. That testimony is as follows:

(p. 81)

"Q. Then what? Did he say anything about calling anybody?

"A. Yes. He told me to call and see if I couldn't get it straightened out.

\* \* \* \* \* \*

(p. 86)

"Q. \* \* \* Vaudy; what kind of gun did that man have on, was it a six shooter or was it an automatic?

"Q. I don't know. I didn't look at it.

\* \* \* \* \* \*

(p. 92)

"Q. On this night, did you and this fellow Jones drink any beer together?

"A. Yes sir.

"Q. How did this come about?

"A. He suggested it.

\* \* \* \* \* \*

"Q. Did you or your wife, either one, at any time ask this man to leave that room?

"A. No sir.

"Q. Did this man ever touch you in any rude or angry manner?

"A. No sir.

\* \* \* \* \* \*

(p. 93)

"Q. All right. Was this man Jones rude, or was he polite, or what was his manner?

"A. Well, he just let me know what he came after and what he wanted.

"Q. If your wife says he was very polite, would that be right or wrong?

"A. Well, I wouldn't call it polite for somebody to take your car when you're just five days late with the payment.

\* \* \* \* \* \*

(p. 94)

"Q. Did this man Jones threaten your wife?

"A. No sir.

\* \* \* \* \* \*

"Q. Did he ever touch your wife in a rude or angry manner?

"A. No sir.

\* \* \* \* \* \*

(p. 95)

"Q. You said you and Mr. Jones went to get some beer. Is it correct that he had to wait in your room for a telephone call?

"A. Yes sir.

\* \* \* \* \* \*

(p. 99)

"Q. Do you remember any conversation between Mr. Jones and your husband concerning what would happen if the car was not surrendered?

"A. Well, I remember him saying that, if he didn't turn it over to him, that he would—the Sheriff, somehow, would come in; that he would call the Sheriff to come and get it, or that he would go to jail if he didn't.

\* \* \* \* \* \* \*

(p. 100)

"Q. Do you remember any conversation concerning the making of a bond in Louisiana?

"A. I remember him saying something about it. That it would be hard for him to make it.

\* \* \* \* \* \*

(p. 101)

"Q. All right. Now, did your husband offer to make a cash payment at that time?

"A. Yes sir.

\* \* \* \* \* \*

"Q. What did Mr. Jones say?

"A. Well, he talked like he didn't think it was a fair deal, but he had a job to do.

\* \* \* \* \* \*

(p. 103)

"Q. You did testify, though, that he (Jones) did not force his way in.

"A. I guess I did.

\* \* \* \* \* \*

(p. 104)

"Q. All right. Was this man Jones polite, or rude, or what was his attitude?

"A. Well, I don't remember him being rude.

"Q. Did you not testify on deposition that he was very polite?

"A. I guess I did."

■ The general affirmative charge with hypothesis may be given only if the evidence, if believed, considered most favorably against the party requesting such charge, shows clearly and without dispute that such party is entitled to a verdict. McElroy, The General Affirmative Charge with Hypothesis in Alabama, 1 Ala. Law Review 151; Morris v. Hall, 41 Ala. 510. Thus, where the evidence is conflicting, there is no error to refuse the general affirmative charge with hypothesis.

Appellant contends that the trial court erred in sustaining demurrers to appellant's pleas numbered 4, 5, 6 and 8.

Plea 4 to count 3 of the complaint alleges that the tort complained of was committed in Louisiana and that there is no common law action for the taking of personal property in Louisiana.

Plea 5 is to count 3 of the complaint. It alleges that the car was repossessed under a valid release, but that count 3 of the complaint does not bring appellee within the statutory form of action for the taking of personal property in Louisiana; and that the Louisiana detective was an independent contractor.

Plea 6 to count 3 of the complaint alleges that the Louisiana statutory form of action for the taking of personal property is not available to the plaintiff when a written release is given.

■ Plea 8 to count 3 alleges that there is no cause of action for the wrongful taking of personal property in Louisiana and therefore the cause alleged in count 3 will not lie. However, it is clear that Louisiana does recognize the tort of conversion of personal property. See Victor v. Fairchild Motor Corp., La.App., 8 So.2d 566; Carter v. Mintz & Goldblum, La.App., 8 So.2d 709; Strahan v. Simmons, La.App., 15 So.2d 164. Furthermore, the tort of trespass to personal property is transitory in nature and as such there is no error in trying this case in Alabama. Wolff v. McGaugh, 175 Ala. 299, 57 So. 754; see also Title 7, Section 54, Code of Alabama 1940, as Recompiled 1958.

Appellant also informs us that there is a statutory form for the action of trespass to personal property in Louisiana, but failed to direct us to such a statute.

Appellant further requested this court to inform him as to how the law of a sister state could be pleaded, if not by conclusion. Although we do not feel it is our

duty to plead the case for any party, we do feel inclined to direct appellant's attention to the case of Dawson v. Dawson, 224 Ala. 13, 138 So. 414.

In view of the foregoing, the trial court's sustaining of appellee's demurrers to the pleas in question was not error. We also conclude that appellant's pleas were duplicitous, and filled with conclusions, and the demurrers could have been sustained on those grounds.

For the errors above enumerated, this case is reversed and remanded.

Reversed and remanded.