This is a fraud case involving an insurance policy.
This case has previously been appealed to the supreme court, which reversed a $16,000 bad faith judgment against Independent, and remanded the case to the trial court. See,Independent Life Accident Insurance Company v. Parker,449 So.2d 233 (Ala. 1984).
The facts in this case are related in a thorough statement of the facts in the above opinion, and we adopt that statement here. In summary, Parker, who was a "crop duster," wanted to purchase a hospitalization and life insurance policy from Independent's agent, Dan Turrentine. Parker wished to obtain coverage at a lower rate than offered by other insurers. Turrentine told Parker that his hospitalization insurance portion of his premium would be lower if he took a policy with a high deductible. Turrentine told Parker that he could also deposit (by automatic withdrawal from Parker's checking account) an additional $10.00 per month into a "cash value deposit fund," which would be withdrawn along with the monthly policy premium. Turrentine told Parker that the money in the fund would earn interest and could be withdrawn by Parker to pay the deductible on his hospitalization insurance or for any other purpose. Parker thought that the "premium" quoted to him by Turrentine included the monthly $10.00 withdrawal for the cash value deposit fund. After taking a check from Parker for the first month's premium, Turrentine arranged for subsequent monthly premium withdrawals by automatic draft from Parker's checking account.
After approval of the policies by Independent, Turrentine delivered them to Parker. The automatic withdrawals then began. The amount drafted from Parker's checking account each month was within figures Parker testified that Turrentine quoted to him as the cost of the "premium," *Page 1291 
including both insurance premium and a cash value fund deposit of $10.00. However, the $10.00 monthly withdrawal for Parker's cash value deposit fund was not being made. Independent had incurred problems with causing overdrafts in other policyholders' checking accounts when it withdrew (in addition to policy premium) by automatic draft amounts for deposit to their cash value deposit funds. (One might reasonably conclude from this problem that other policyholders were also confused about whether their "premium" included the cash value deposit fund amount, and were failing to leave enough in their checking accounts to cover both withdrawals.) Since it had no verification that Turrentine had contacted Parker after issuance of the policy to confirm that the additional $10.00 was to be withdrawn monthly, Independent decided not to withdraw that amount from Parker's checking account. Independent testified that it did not notify Parker of its decision because Parker would receive statements about his cash value deposit fund balance. Parker admitted receiving the statements, which are reproduced in the supreme court's decision, 449 So.2d at 234. Independent also testified that it did not notify Turrentine of its decision. Turrentine received slips showing that the premium had been paid, but never checked to see if the cash value deposit fund withdrawal was being made.
In 1981, Parker attempted to withdraw money from the fund. By a letter dated December 8, 1981, Independent informed Parker that no withdrawals from checking for deposit to the fund had been made, and that therefore there was no money to withdraw.
On October 15, 1982, Parker filed suit against Independent and Turrentine. The case was tried, with the jury returning a verdict for Parker, which, as stated above, was reversed and the case remanded.
At the second trial, Parker sought to recover for intentional misrepresentation and for reckless misrepresentation. He also added a new count for failure to reveal a material fact.
The jury returned a general verdict, for $5,000, against Independent and Turrentine. Independent filed motions for directed verdicts on all three counts and for judgment notwithstanding the verdict. All the motions were denied. From their denial, Independent perfects this second appeal.
On appeal, the first issue raised by Independent is whether the trial court erred in submitting the "intentional" and "reckless" fraud counts to the jury, where there was no proof of its making a false representation of a material existing fact. The second contention of error argued by Independent is that Parker's claim is barred for failure to comply with the one-year statute of limitations for filing an action for fraud. Finally, Independent also contends there was no evidence to support the new count added by Parker (suppression of a material fact) and that the court erred by submitting the case to the jury on that count.
Motions for directed verdicts and for judgment notwithstanding the verdict test the sufficiency of the evidence in the same way. McLarty v. Wright, 56 Ala. App. 346,321 So.2d 687 (1975). Neither motion should be granted if there is any conflict in the evidence for the jury to resolve.McLarty, supra. "A directed verdict is proper only where there is a complete absence of proof on an issue material to the claim or where there are no disputed questions of fact on which reasonable people could differ." Ritch v. Waldrop, 428 So.2d 1
(Ala. 1982). When it considers a motion for directed verdict, the trial court must let a question go to the jury, "if the evidence, or any reasonable inference therefrom, furnishes a mere gleam, glimmer, spark or scintilla in support of the theory of the complaint." Ritch v. Waldrop, supra. The same rule applies when a J.N.O.V. is filed. Casey v. Jones,410 So.2d 5 (Ala. 1981).
After reviewing the record, we cannot find that the trial court erred in submitting the case to the jury. The threshold question of when Parker actually discovered fraud for the purpose of applying the *Page 1292 
statute of limitations is a question of fact for the jury.Wilson v. Draper, 406 So.2d 429 (Ala.Civ.App. 1981). Independent, in its original amended answer, and in its motions for a directed verdict and for J.N.O.V. at the second trial, argued that Parker knew or should have known, more than one year before he filed his complaint, of the facts giving rise to his complaint, and that therefore Parker's claim was barred by the statute of limitations. If the jury believed that Parker first actually discovered those facts on December 8, 1981, when Independent informed him that there was no money in the cash value deposit fund, then Parker's October 15, 1982 filing of his original complaint was timely under § 6-2-3, Code of Alabama 1975.
Further, there is evidence from which the jury could have found that there was either an intentional or reckless misrepresentation to Parker or a suppression of a material fact which Independent or its agent had an obligation to communicate to Parker. Independent's own employee has testified that they did not notify Parker that no withdrawal from his checking account for deposit into the cash fund was being made. There is also evidence from which the jury could have concluded that there was an intent to deceive, most particularly the failure of either Independent or Turrentine to point out to Parker during passage of four years that no withdrawal for the fund was being made. (Apparently, the jury did not find that the vague yearly notices from Independent of the balance in the fund sufficiently alerted Parker that no withdrawals for the fund were being made.) Although Independent and Turrentine contend that Turrentine did not know withdrawals were not being made, the limit of his concern regarding Parker and the cash value deposit fund can be best summarized by the following testimony elicited from him at trial:
 TURRENTINE: ". . . All I ever got was just a slip of paper telling that the premium had been paid and that was all I was interested in. As long as the premium on the insurance was paid, that's all I had to worry about.
 McKELVEY: "If the premium was paid you got your commission, is that correct?
 TURRENTINE: "If the premium was paid I got my commission, I was paid on that. I was not paid on the cash value part because that's Mr. Parker's.
 McKELVEY: "Okay. Just so I understand and so the jury understands and so the record will speak correctly, you told the Parkers that the $10 was going to be included in the bank draft and they bought the policy from you?
TURRENTINE: "Right."
As Parker testified that he would not have purchased the policy if he had known that the automatic premium amount did not include a $10.00 contribution to the cash value deposit fund, this fact was material. The jury could reasonably have inferred from the evidence that such knowledge was deliberately withheld from Parker. There was testimony from which the jury could have concluded that Parker suffered some damage as a result of Independent's and Turrentine's actions or lack thereof. However, we note that there was no issue assigned challenging the impropriety of the damages awarded. Finally, we note that the jury returned a general verdict for $5,000 in this case. The law provides that if the evidence supports any one of the three counts in this case, it will support a general verdict. Automotive Acceptance Corporation v. Powell,45 Ala. App. 596, 234 So.2d 593 (1970).
AFFIRMED.
BRADLEY and HOLMES, JJ., concur. *Page 1293